We have our third case of today. It's number 19-2989, United States v. Boyd. Mr. Ulrich and Ms. Olszewski. Hey, pleas of court, Frederick Ulrich. I'm an assistant federal public defender in the middle district of Pennsylvania, and I represent the appellant, Jeffrey Boyd. I'd like to reserve three minutes of my time for rebuttal. No problem. In our view, the principal issue in this particular appeal concerns the instructional error based on the recent Supreme Court decision at Reahey v. United States. And in this regard, the parties agree that the court, in this case, failed to instruct the jury on an element of the offense under section G8. That is, whether Mr. Boyd had knowledge of his status within the class of prohibited individuals under that particular section. Second, there's no real dispute that Mr. Boyd's knowledge of his status was a central issue to his defense. The government maintains that this issue, this omission in jury instructions, was harmless error because no reasonable jury could have returned a verdict in favor of Mr. Boyd on this particular element. There certainly seemed to be a mountain of evidence here. Well, there's a mountain of evidence relative to the fact that some sort of proceeding was from the Manleys, Jennifer and Connor, that Mr. Boyd was present, that he was sworn, and that they testified. But that doesn't answer the question of whether he had knowledge, that his status is one thing, but knowledge of his status is quite another. In our view, the government in this particular case cannot carry its substantial burden under the harmless error standard of proof beyond a reasonable doubt for several reasons. First, taking a look at the March 19th order itself and starting at the top of it in the left hand corner, you'll see that it's continued. And then moving down the order, you'll see that it contains the equivocal notification that Mr. Boyd has been or will be provided with an opportunity to be heard. And then beneath that, the order itself is emergency and ex parte. And then after that, the court schedules a hearing for September 18th of 2018. And then turning the page, the order then says this emergency temporary ex parte order will remain in effect until the court conducts a full hearing. And on the final page, the order says a final order will issue only after notice and hearing. And then there's a prohibition in it that says possession of a firearm may subject an individual to a federal prosecution. Now, when you look at this particular order, and then you look at the verbiage or language used in a federal order context... Let me just ask a question. At the hearing that took place, you actively contested Mr. Boyd's knowledge of his status at trial, right? Yes, we contested whether he had an opportunity to participate at that March 19th Yes, it was hotly contested based on the language of these two orders. And he testified? Mr. Boyd did not testify, just the Connor and Jennifer Manley testified on that issue. Well, he testified in something. Well, he was sworn in and the Manley said at the protection from abuse hearing that he spoke to the judge. Whether that was testimony or what actually happened at the proceeding, we don't know. There's no transfer from it. All we know is that some sort of hearing was held and that the court continued. And then looking at the final order context where the judge issues a warning in the court to the individual, advising them that they are now subject to penalties in Section 922G, or they have that status. And the final order also contains that same warning. And when you consider those two documents, in conjunction with the fact that Mr. Boyd's hearing on March 19th was sandwiched in with 11 cases between 9 and 1030, we believe there's ample evidence in the record for the jury to have made a finding in his favor on the knowledge of him. Had he handed this order, the March 19th order, to a lawyer or an attorney and asked them their view of its effect under Section 922G, they would have legitimate questions, reasonable as to whether it actually qualified as an order because of its temporary emergency ex parte status. Mr. Boyd's a layperson, so it's not a reach to believe that a jury might have hesitated before returning a verdict of guilt on this particular element of the offense. His restraining order itself was issued after a hearing in Tulsa, was it not? The March 19th order was issued after a hearing, correct. Again, though, the fact that Mr. Boyd may have had the status doesn't answer the question that the court in Rehave addressed, which is whether he had knowledge of it. And there were circumstances surrounding the language in that order, its conflicting messages that would have impacted on, or at least affected, whether he had knowledge. In this court's own case law, its own jurisprudence over many years and in several cases, confirms this. In multiple instances, this court has held that the failure of a judge to instruct a jury on an element of the offense is sufficient to satisfy the plain error standard. Take, for example, United States v. Hayward, a case some years ago that was prosecuted in the Virgin Islands where the individual was prosecuted under section 922k for having a firearm with an obliterated serial number. In that particular case, the court did not instruct the jury, but he had to have knowledge of the obliterated serial number. Like here, the government came in and said, well, you know, he used this gun during a robbery, in fact, a Hobbs Act robbery. He brandished the gun. He took the gun apart and disassembled it, and he was in a car with another gun that had an obliterated serial number, and the jury made a that the defendant would have recognized that the gun he was using to commit this robbery had an obliterated serial number. But this court, under a plain error standard, declined to speculate what the jury might do in that particular circumstance. Other courts have gone so far in the Fourth Circuit, for example, as to treat a rape-hate issue as a structural. We're not asking the court to do that here. We're not even asking the court to find that it was a fairly unusual case. And temporary order was extended. Well, no, the government is saying they're willing to go with the harmless error standard, the burden's on them, and they think they have so much evidence, and it is pretty strong, that they have made their case. We don't think they made the case because the element that's at issue here, which is whether Mr. Boyd had knowledge of the status, was never submitted to the jury. Now, it very well may be that the jury could, on a retrial, determine that the evidence that the government submitted was sufficient. What do you make of the letter that Boyd wrote to the judge? Well, in that letter, he simply acknowledged that he was out of hearing. The next words out of his mouth in that letter were that it was a massive misunderstanding. So what that means, I have no idea, other than he didn't seem to think that whatever happened at that proceeding had any meaning, other than it was extended, and he was writing the court to let them know he wasn't going to be there in September. I'm not sure the letter itself provides any indication as to whether he had knowledge of his status under Section 922G. It simply acknowledges that he was in attendance on March 19th. Well, it acknowledges that he was aware of what was going on, does it not? It acknowledges that he was aware that there was a proceeding on March 19th. And he didn't like what happened? Well, he didn't like what happened, and he attributed it to a massive misunderstanding, but most of the letter is directed at the fact that he's stuck in Pennsylvania and in jail, and he won't be able to make it back for the September hearing, the final one. It would seem that he could have made a defense of mental illness, but that defense was never made, never argued. That may have been a defense, but the defense that was made, which was whether documents relative to the testimony satisfied that he had an opportunity to participate, was sufficient also to demonstrate that there may have been an issue in terms of his knowledge. And in fact, there was ample evidence to suggest that maybe he did not know that he had the status under Section 922G that would have prohibited him from possessing a weapon. In this unusual fact paradigm where an emergency order has been continued, and there was conflicting advice given to Mr. Burke, we think the record is sufficient to make a finding that a jury may have returned a verdict in his favor on that point. If the court has no other questions, we'll rest on their briefing relative to the remaining issues. Thank you. Thank you. Good morning, your honors. My name is Michelle Olszewski, and I represent the United States. And this court should affirm the judgment of conviction and sentence in this case. And while the government acknowledges the Raheith error in the district court, the error was harmless beyond a reasonable doubt. And I say that because a review of the evidence in the law supports only one conclusion, and that is that the government proved beyond a reasonable doubt that Mr. Boyd was aware of his status as being subject to the court order. Because in order to find Mr. Boyd guilty beyond a reasonable doubt, the jury necessarily had to be convinced beyond a reasonable doubt that Mr. Boyd knew his status, such that a Raheith instruction would not have led to a different conclusion. And I say that in the context of 922 G8. This is a subsection of section 922 that is unique, because the actual crime, the elements the government has to prove in this case, essentially involves knowledge that a defendant knows his status, because the government has to prove notice beyond a reasonable doubt. We have to prove that a hearing was held beyond a reasonable doubt. And we have to prove that the defendant had an opportunity to be heard beyond a reasonable doubt. So knowledge of his status is an essential element in this case, and the government proved that beyond a reasonable doubt. The actual knowledge element in this case is actually in the indictment as well, because not only does the government have to show knowing possession of the gun, 928 G8 requires the government to allege and prove that the defendant knew of his status, qualifying him under this order. And the government proved that necessarily by the jury's verdict beyond a reasonable doubt. What evidence is in the record that Mr. Boyd knew the specific terms of the protective order against him? Well, because it was in writing, he had possession of it. The most compelling evidence is the letter that he wrote on August 26, 2018, to the court in Oklahoma, saying, telling the judge, hey, I was in your courtroom on March 19, 2018. And on that date, you extended the order of protection for six months. And by the way, you ordered us to come back on September 19, 2018. And you also ordered me to have a mental health evaluation. All of that supports his knowledge that he has this order, and he's constrained by the specifics in that order. I would also say that your honors had a question about the defendant's mental health. That was an issue that was precluded, pretrial by the defendant. And it was not a central issue in this case, but his knowledge was what the entire case was about. No, and the point is, there was a caveat in my question that the argument was not made. It was not made. It was precluded. The defense filed a motion limiting to preclude the government introducing any evidence of that. And it was not a central issue in this case. But what was a central issue was the defendant's presence in that courtroom, his opportunity to be heard, what transpired in that courtroom, which was the interaction between the judge and the protected parties in that courtroom. And that's all the law requires. And as I indicated, those were elements of the crime that are essentially unique to 922-G8. Rahif only requires knowledge of the status. And certainly beyond a reasonable doubt, even in light of the Rahif error, beyond a reasonable doubt, the government proved that. The jury had to essentially find that. And the jury instructions in this case also were consistent with those elements as to the extent that the jury was instructed, you must find beyond a reasonable doubt. Notice was provided, a hearing was held, the defendant had an opportunity to be heard. And then on top of that is the defendant's letter. Four or five months after this, the order was issued on March 19th. He finds himself in Pennsylvania on August 26th. He's fully aware of the contents of that order. He's fully aware of his status. In fact, the government would not have introduced any more evidence of his knowledge, even if the jury was instructed, you have to prove, government has to prove beyond a reasonable doubt that the defendant knew of his status. I mean, we proved that. The law required us to prove that. So that is essentially why the government is confident that even though there was a Rahif error, it was a harmless error in light of the exceptional strength of the government's case, the defendant's own words. In addition, the documents that were introduced at trial further established that the defendant was present, the defendant was sworn, as were the three protected parties in that case. So the live testimony from the witnesses who were present, two, including his ex-wife, as well as his son, confirmed what the documents testified to. The government also brought in the clerk from the Oklahoma Tulsa County Court to testify as to the authenticity of those records. And the jury was instructed, you must find knowledge essentially, without even being told they have to find knowledge. Were you trial counsel? I was, Your Honor. I got to ask you one question about the Rahif issue. I can understand, but the threats against the first family, how are those relevant to either knowledge of a protective order status or knowingly carrying a firearm? Those threats were relevant and probative of the context and background as to why the defendant was even brought to the attention of law enforcement. Because this is a defendant who appeared on the doorstep of a woman by the name of Catherine Kelchner. Catherine Kelchner did not go to the police because Mr. Boyd showed up at her doorstep. In fact, she went to lunch with him the next day. She did not go to the police because Mr. Boyd had a gun, because she didn't know Mr. Boyd had a gun. She went to the police because he made threats against the president. But my point is, how is that relevant as to whether he had knowledge of protective order status or knowingly carrying a firearm? It seems the only purpose is to somehow make him appear dangerous in the eyes of the jury. I would disagree with that, Your Honor. It's not relevant to the crime for which he was in court. And in that way, it's not propensity evidence. Yeah, it certainly doesn't pass the 403 test, does it? It does. It does because in United States v. Green, this court said that evidence such as this can be brought in to provide the history of the case, the background, the context. These witnesses did what they did for a reason. And a jury was not required to be left to think, well, why? Why was the Secret Service involved? Why did this woman go to the police? It was only relevant for that purpose. And it was not exploited to the extent that it was testified to. It was testified to in passing. It was subtle. It was only presented to the jury in the context of why the witnesses did what they did. So I know that— Isn't your far better argument one of harmless error on this issue? I would agree that if the court finds that this is error, it was certainly harmless beyond a reasonable doubt, again, because the government's evidence in this case was exceptionally strong. So I believe that the district court appropriately allowed this evidence in the context of 404B because it was probative and relevant. We don't approach these cases, these fact scenarios, in a bubble. These witnesses had to testify as to why they did what they did. However, if the court finds that it was error, it was certainly harmless beyond a reasonable doubt. Let me switch gears to the Second Amendment issue. Isn't this statute that you charge over-inclusive because it covers protective orders against some persons who are not found to pose a danger to their partners? I mean, what if it was just simply harassment? Too many phone calls. He's bothering me. I can't take it anymore. I want a restraining order. That used to happen all the time back in my hometown. People would try to get a restraining order. Not so much—often, sometimes physical. I just don't want the guy around. So isn't this statute over-inclusive? It is not over-inclusive for these reasons, Your Honor. It only applies to individuals who find themselves under a domestic order of protection. 922G8 does not even apply to all of that class of individuals because 922G8 requires specific language to be included in that court order, which was the case here. Not—the law does not require a definitive finding that this person presents a threat of abuse or a specific finding because the law only needs the lower court or the predicate court to find that— to preclude or protect the individual subject to this order, not to attempt to engage in threatening behavior. We don't know—we don't know the underlying facts that led to this order. That also was the subject of a pretrial motion by the defense, precluding any facts related to this order. However, 922G8 does not suggest that a court facing a 922G8 charge look into the underlying facts. It is enough if that order of protection has that specific language in it, which this court did, which this order did. In addition, why it is not overbroad is because these orders are only limited in their duration. This is not a lifetime ban. This is a ban for the duration of the court order. And in this case, when Mr. Boyd found himself charged in Pennsylvania, the court order had only required him to surrender his firearms for six months. And in fact, there was another hearing scheduled for September 19th, at which time the parties would come back before the court. We don't know what would have happened at that point, but these court orders do indicate that a permanent or final order of protection would be in place for five years. So in that respect, this is clearly narrow in terms of its breadth. And it's overreach. Colleagues, do you have any further questions? Nothing further. No. Okay. Thank you very much. Thank you, Your Honors. Just briefly, just to pick up on the government's point. The fact that Mr. Boyd may have been aware of this hearing that took place on March 19th does not mean that he knew that it satisfied requirements in Section 922 G8. In other words, that he had knowledge of the status within the class. And to follow up on Judge Ambrose's question, I do not believe, and the record clearly reflects this, that the evidence concerning a potential assassination of the president had anything to do with why the state troopers initially went to go see Mr. Boyd. They testified on a couple of occasions, both in the pretrial context and then again in trial. But they were concerned for his mental health. And that's why they went to get him. So to the extent that background evidence had any import in this particular case, it was more than settled. They were concerned about his mental health because he was hearing voices telling him to go kill the president. And that's where this strays into a 403 problem, that the prejudice associated with that kind of testimony more than outweighed any probative value associated with the background necessity. Well, that might be true if there weren't instructions given to the jury about the way that they should consider this evidence, but there were repeated instructions to the jury on how to consider it. And I think that should be adequate to cure, since one, we have to presume the jury follows their instructions to assume that the jury did follow the instructions. Well, to push back a little bit on that is, I would simply say this, that clearly a curative instruction can have an impact in terms of limiting how a jury considers a piece of evidence, providing that the evidence has some sort of relevancy to the charge. But once you're pushing in all this background information that can be explained otherwise, as to why the police responded to something that doesn't relate to a particular element of the offense, then a curative instruction has less impact, at least less effect in terms of curing that prejudice. And finally, on the Second Amendment point, just make this observation that District Court spent considerable time in its opinion, framing the Second Amendment issue on the Tenth Circuit opinion in Reese. But there's a significant difference between this case and Reese. In Reese, it was a final order where the person actually had threatened and actually had beaten the person that was the subject of it. Here, this is an emergency protective order. So to that extent, to follow up on Judge Ambrose's point, the statute does sweep a little more broadly. It's not narrowly tailored to a circumstance and doesn't hinge on a fundamental order. And for those reasons, we would ask the court to vacate the judgment in this case and remain for a new trial. Thank you. Just one quick question. On the government's closing, you made that an argument that the use of the word misleading somehow was misconduct. But does it matter for the alleged misconduct error whether the defense formally moved for a mistrial? Could matter. In this case, there were multiple objections to the use of that language, and the court cut them off pretty quickly and just overruled them. If it had happened once, perhaps, but five or six times, it was a little bit more than necessary. We think that under these circumstances, it's sufficiently preserved. All right. Thank you very much. Thank you. Thank you to both counsel for being with us today, and we'll take the matter under advisement. Thank you, Your Honor.